IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **LINDA WHITE,** Plaintiff, v. **SANTEE COOPER,** Defendant. | Civil Action No. 2:10-0536-RMG-BM **REPORT AND RECOMMENDATION** |

This action has been filed by the Plaintiff, pro se, asserting a claim for wrongful termination against the Defendant due to her race (African American) and/or gender. Plaintiff is alleged to be a former employee of the Defendant. Plaintiff's original complaint set forth her claim, in toto, as follows:

> Terminated for canceling of a non-job related class. Class was scheduled for 7-7-08 and I cancelled on 7-7-08 afternoon due personal reasons out of my control (lack of training). Other [participants] had had hands-on-training by Santee Cooper with their trucks. I ask for help and was told that I would receive help prior to class, but received no training CDL class.
>
> I feel that I was wrongfully terminated by cancelling this class because that I am a black female. I feel that I was discriminated against. I need compensation for this action.

See, Verified Complaint.

Defendant filed a motion for a more definite statement pursuant Rule 12(e), Fed.R.Civ.P., arguing that Plaintiff's complaint was so lacking in specificity and detail that it did not provide the Defendant fair notice of Plaintiff's claims, or the grounds on which they rest. By Order





filed August 4, 2010, Defendant's motion was granted, with Plaintiff's response to Defendant's motion (which listed nine separate paragraphs of allegations) ordered to be added to the "Statement of Claims" portion of Plaintiff's pro se complaint. However, Plaintiff was also directed in that Order to file within twenty (20) days an additional statement setting forth the jurisdictional basis for her claim (i.e., Title VII, 42 U.S.C. § 1981, etc.). Plaintiff was further specifically advised that if she failed to comply with that Order as directed, her case could be subject to summary dismissal. See Order filed August 4, 2010.

In her additional allegations, Plaintiff alleged that in the summer of "2002-2003" an individual named Lloyd (African American) instructed two white individuals to do some cleaning in the basement, but that both refused because it was too hot and dirty. Plaintiff alleges that she went and did this job, and that when Lloyd reported what had happened to supervisor Brian Singletary (white), nothing was said to the two white employees "[b]ut I got called in the office." Plaintiff also alleges that on an unspecified date she and a white employee were instructed to cut the grass, but the white employee "went somewhere else". Plaintiff alleges that when she took a break to get something to drink she was written up by a white supervisor, Galene Allen. Plaintiff further alleges that on another unspecified date she and two white employees were working when the two white employees went to take a smoke break in Galene Allen's office. Plaintiff alleges that when she took a break in the work area she received verbal counseling, but nothing was said to the white employees. Plaintiff alleges that these same two white employees were allowed to take their personal truck to the repair shop at Santee Cooper, and that these two employees would also "cook for the group to keep from working."

Plaintiff also alleged that she would see work that needed to be done before it got hot,





but would be told not to do it at that time, but then when it got hot she would be told to do the job with no help. On another occasion [date unknown] she went to clean herself up in the bathroom when she had messed up her clothes, and when she came out of the bathroom Singletary and Allen were waiting for her and wrote her up for being in the bathroom too long. Plaintiff complains that the nurse's office was next door to the bathroom, and employee Jackie Guerry (white) would go into the nurse's office to sleep when no one was there, and that supervisors "could see this door to see who was coming in & out as well as how long they were in there. Plaintiff also alleges that three white employees (Ernie, Berry and Jackie) had less seniority but got cleaner and "cooler" jobs. Finally, Plaintiff alleges that the Defendant has a big farm type tractor used for cutting grass, and that when she asked if she could use it to cut grass she was told no because she did not have a commercial driver's license. However, Plaintiff alleges that employees Jason Tanner and Derrick Funderburk (both white) were able to use the tractor with no commercial driver's licenses. See Court Docket No. 25.

In response to the Court's Order of August 4, 2010, Plaintiff submitted a document (Court Docket No. 28) wherein she stated that the date for the class referenced in her original complaint was actually July 4, 2008, not July 7, 2008. In a second filing (Court Docket No. 29) Plaintiff stated that "after having the accident on 8-13-07" she started to receive even more harassment from supervisor Ritchie Mills. Plaintiff has attached to this filing a letter (apparently from Mills) to her dated August 28, 2007, a Review System document dated August 27, 2007, an Employee Performance Appraisal dated November 30, 2007 (reviewed with the Plaintiff January 14, 2007), a Salary Merit Increase form, an Employee Data Record form, and an Industrial Work Availability form. Contrary to the instructions contained in the Court's Order of August 4, 2010,



however, Plaintiff did not indicate or state the jurisdictional basis for her claim.

The Defendant then filed a motion a dismiss pursuant to Rule 12, Fed.R.Civ.P., asserting that the Complaint should be dismissed for failure to state a claim, and for failure of the Plaintiff to comply with the Court's Order of August 4, 2010 requiring her to state the jurisdictional basis for her claims. As the Plaintiff is proceeding pro se, a Roseboro Order was entered on September 9,2010, advising Plaintiff of the importance of a dispositive motion and of the need for her to file an adequate response. Plaintiff was specifically advised that if she failed to respond adequately, the Defendant's motion may be granted, thereby ending her case.

However, notwithstanding the specific warning and instructions as set forth in the Court's Roseboro Order, Plaintiff failed to file any response to the Defendant's motion to dismiss. In consideration of Plaintiff's pro se status, the Court entered a second Order on October 19, 2010, granting Plaintiff an additional ten (10) days to file a response to the motion to dismiss. Plaintiff was further specifically advised in that Order that if she failed to respond, this action would be recommended for dismissal for failure to prosecute. However, although Plaintiff thereafter did send two letters to the Court asking when her case was going to be scheduled; see Court Docket Nos. 42, 44; see also Court Docket No. 45 [Letter from Clerk advising as to case status]; she failed to file any response to the Defendant's motion to dismiss or the arguments set forth therein.

A Report and Recommendation was then issued on on January 26, 2011, recommending that the Defendant's motion be granted, and that this case be dismissed, without prejudice. See Court Docket No. 45, see also Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989), cert. denied sub nom, Ballard v. Volunteers of America, 493 U.S. 1084 (1990) [Magistrate Judge's prior explicit warning that a recommendation of dismissal would result from plaintiff failing to obey





his order was proper grounds for the district court to dismiss suit when plaintiff did not comply despite warning]. In response, Plaintiff filed a letter objecting to the Report and Recommendation on February 14, 2011, stating that she did not want her case to be dismissed and that she "[felt] like [she] was fired because of the fact that I am black & a female and it was racial discrimination." See Court Docket No. 49. An Order denying Defendant's motion was thereafter filed on February 18, 2011, finding that "Plaintiff's Complaint, while inartfully pled, does set forth allegations of unfair and unequal treatment based upon race and/or gender" sufficient to withstand a motion to dismiss. See Court Docket No. 51. The matter was then re-referred to the undersigned, and following an answer being filed by the Defendant, a scheduling order was entered on March 4, 2011 providing, inter alia, for the completion of discovery by July 6, 2011, with any dispositive motions to be filed by September 6, 2011.

On June 22, 2011, the Defendant filed a motion to dismiss for lack of prosecution, noting that Plaintiff had failed to attend her deposition and arguing that the Defendant was incurring substantial costs due to Plaintiff's failure to cooperate. Plaintiff filed a response to this motion on July 8, 2011, stating therein that she had not seen the notice for her deposition, was sorry for any inconvenience she may have caused, and that she wished to proceed with this matter. See Court Docket No. 68. The undersigned thereafter entered an Order ordering Plaintiff to attend her deposition and to promptly respond to any discovery requests received from the Defendant, and simultaneously extending the discovery deadline to August 19, 2011 and the dispositive motions deadline to October 14, 2011. Plaintiff was also again specifically advised that a failure by her to obey Court orders could result in the dismissal of her case. See Order filed July 12, 2011 (Court Docket No. 69). Plaintiff did thereafter appear for a deposition. See Court Docket No. 77-2.





On October 13, 2011, the Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., and a Roseboro Order was entered by the Court on October 17, 2011, granting Plaintiff thirty-four (34) days to respond to the motion for summary judgment. However, as before, Plaintiff failed to file any response to the Defendant's dispositive motion despite the warnings and explanations set forth in the Court's Roseboro order. In consideration of Plaintiff's pro se status, a second Order was entered on November 22, 2011 granting Plaintiff an additional ten (10) days from the date of that Order in which to file a response to the motion for summary judgment, with Plaintiff again specifically being advised that if she failed to respond, this case would be recommended for dismissal. See Court Docket No. 81. Plaintiff thereafter filed a one page document with the Court on November 30, 2011 in which she stated that she did not understand what "the letter" meant, but that she did "want to continue with the case." No response to the arguments set forth in Defendant's motion for summary judgment was presented, nor did Plaintiff submit or refer to any evidence in opposition to the Defendant's summary judgment motion.

The Defendant's motion for summary judgment is now before the Court for disposition.[1]

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the

---

[1]As this is a dispositive motion, this Report and Recommendation is being entered for review by the Court.



pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, even though this Court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the Court cannot assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I..**

**(Gender Discrimination Claim)**

With respect to Plaintiff's claim for gender discrimination, Defendant argues that any such claim should be dismissed for failure of the Plaintiff to exhaust her administrative remedies. The undersigned is constrained to agree.

In order to bring a lawsuit in United States District Court under Title VII, a plaintiff is first required to properly exhaust his or her administrative remedies. Specifically, Title VII requires that a claimant file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state", within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier. See 42 U.S.C. § 2000e-5(e). It is undisputed that South Carolina is a deferral state, that the South Carolina Human Affairs Commission (SCHAC) is the appropriate state agency for purposes of initiating State proceedings,



and that Plaintiff filed a charge of discrimination with SCHAC on November 3, 2008. See Defendant's Exhibit 11. However, this charge clearly only lists "race" as the basis for her charge, with Plaintiff alleging therein that she believed she had "been discriminated against because of my race (black), in violation of the South Carolina Human Affairs Law (SCHA)[2] and Title VII. Id. The administrative charge makes no mention of sex discrimination, and makes no claims of any alleged discrimination on the basis of sex. Further, despite being place on notice by the Defendant that it was seeking summary judgment on this claim based on failure of the Plaintiff to exhaust her administrative remedies, Plaintiff has failed to respond or to otherwise submit any arguments in opposition to this ground for dismissal whatsoever.

Therefore, as the record and evidence before this Court shows that Plaintiff failed to administratively exhaust a claim for sex discrimination, this claim is procedurally barred from consideration by this Court, and should be dismissed. Smith v. First Union National Bank, 202 F.3d 234, 247 (4th Cir. 2000) [EEOC charge "defines the scope of [a plaintiff's] subsequent right to institute a civil suit"]; Sloop v. Memorial Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999) [a Title VII claimant must first exhaust administrative remedies with regard to their claim before filing the claim in federal court]; Chacko v. Patuxent Institution, 429 F.3d 505, 509 (4th Cir. 2005); Polsby v. Chase, 970 F.2d 1360, 1363 (4th Cir. 1992) ["Procedural requirements...for gaining access to the ...courts are not to be disregarded by courts out of a vague sympathy for particular litigants"], vacated

---

[2]As Plaintiff has failed to ever clarify her claims, it is unclear whether she has intended to assert a claim under the South Carolina Human Affairs Law in this lawsuit. However, in its Order denying the Defendant's original motion to dismiss, the Court found that Plaintiff's Complaint had set forth sufficient allegations which could reasonably be read as asserting a claim under the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et seq. (i.e., Title VII). Therefore, as has the Defendant; see Defendant's Memorandum, p. 7, n. 61; the undersigned has addressed Plaintiff's claims as having been asserted under Title VII.



on other grounds, 113 S.Ct. 1940 (1993).

## II.

## (Race Discrimination Claim)

Plaintiff claims that she was terminated from her job because of her race. See Defendant's Exhibit 1 [Plaintiff's Deposition], p. 22. In order to survive summary judgment and proceed with this claim Plaintiff must submit evidence sufficient to give rise to a genuine issue of fact of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff has not offered any direct evidence of race discrimination,[3] and Defendant argues that Plaintiff has failed to present sufficient circumstantial evidence under the McDonnell Douglas proof scheme[4] to create a genuine issue of fact as to whether she was discriminated against because of her race to survive summary judgment.

---

[3]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

[4]Plaintiff's claim could also be considered under the so-called "mixed-motive" analysis, even if she has presented only circumstantial, or in-direct, evidence of discrimination. Under the mixed motive analysis, Plaintiff need not show race was the sole motivating factor, but only that it was a motivating factor. Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). Historically, consideration of a claim under the mixed-motive analysis was only proper in direct evidence cases, but that is no longer the law. See Hill v. Lockheed Martin, 354 F.3d 277, 284-285 (4th Cir. 2004); Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); *cf.* Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) [en banc]. However, since neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis, the undersigned has only evaluated Plaintiff's claim using the McDonnell Douglas analysis. See Brown v. United Parcel Services, Inc., 406 Fed.Appx. 837, 840 n. 2 (5th Cir. Dec. 28, 2010); Hopes v. Roche, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing Nagy v. Baltimore Life Ins. Co., 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.] vacated, in part, on other grounds, 2000 WL 718391 (4th Cir. 2000).



After careful review of the arguments and evidence before the Court, the undersigned is again constrained to agree.

The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in McDonnell Douglas. First, Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against her. Second, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reasons for its actions. Third, if the Defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really based on Plaintiff's race. See McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-256 (1981); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993); Marshall v. AT&T Mobility, 793 F.Supp. 2d 761, 764 (D.S.C. June 6, 2011).

Turning initially to the requirement of establishment of a prima facie case, in order for Plaintiff to establish her prima facie case, the evidence must be sufficient to show (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that other employees who were not members of her protected class were treated more favorably, or there is some other evidence giving rise to an



inference of unlawful discrimination. See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995). See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996). With respect to a termination claim, the fourth prong of the prima facie case may also require a showing that the position remained opened or was filled by similarly qualified applicants outside of Plaintiff's protected class. McDonnell Douglas, 411 U.S. at 802; Jyachosky v. Winter, 343 Fed.Appx. 871, 876 (4th Cir. Sept. 14, 2009); see Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995)[The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged].

Defendant does not dispute that Plaintiff is a member of a protected class [African-American], and that by being terminated she suffered an adverse employment action. Defendant argues, however, that Plaintiff has failed to prove the remaining elements of her prima facie case, requiring dismissal of her claim. The undersigned agrees. First, Plaintiff conceded during her deposition that she was not performing her job to her supervisor's satisfaction. See Defendant's Exhibit 1 [Plaintiff's Deposition], pp. 27, 42-45, 51-53, 56, 60-62, 69-70; see also Defendant's Exhibits 2, 5, 6 and 8. Although Plaintiff testified that she herself believed she was doing her job well, she does not dispute that her supervisor, Ms. Allen, honestly believed that Plaintiff was not performing adequately and needed to improve her job performance. See Defendant's Exhibit 1 [Plaintiff's Deposition], pp. 43-45, 60-62. As previously noted, Plaintiff has failed to present any evidence (or even argument) to dispute the evidence and arguments of the Defendant, and the evidence before the Court fails to show a genuine issue of fact with respect to whether Plaintiff was



adequately performing her job. Cf. Beall v. Abbott Labs, 130 F.3d 614, 619 (4th Cir. 1997)[In considering whether a claimant was adequately performing their job, it is the perception of the decision maker which is relevant, not the self assessment of the claimant]; Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997)[inquiry centers upon the employer's beliefs, and not the employee's own perception of her performance]. Further, Plaintiff also acknowledged in her deposition that she had no evidence to show that any white employee who had similar performance deficiencies was not also terminated. See Defendant's Exhibit 1 [Plaintiff's Deposition], pp. 69-70, 77-78; see also Defendant's Exhibit 8. Cf. Boden v. U.S. Amada Ltd., 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination]; see also Smith v. Sunbelt Rentals, Inc., 356 Fed.Appx. 272 at ** 6-7 (11th Cir. Dec. 10, 2009)[Plaintiff must show that she and any comparable employee were "similarly situated in all relevant respects"]. Therefore, Plaintiff has failed to present evidence sufficient to create a genuine issue of fact with respect to two of the necessary prongs of her prima facie case. Cook v. CSK Transp. Corp., 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a prima facie case of race discrimination...."]; Causey v. Balog, 162 F.3d 795, 801-802 (4th Cir. 1998) [conclusory statements, without specific evidentiary support, do not support a claim for discrimination]; see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) [there must be evidence on which a jury could reasonably find for the Plaintiff]; Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) ["unsubstantiated allegations" are insufficient to defeat summary judgment].

Finally, with respect to all of the individual incidents Plaintiff cites to in her



Complaint (as amended); see pp. 2-3 of this Report and Recommendation, supra; Plaintiff has provided no evidence with respect to any of these incidents and/or claims, or any argument to show how they are related to her termination. Yarnevic v. Brink's Inc., 102 F.3d 753, 757-758 (4th Cir. 1996) [holding that remote inferences and conclusory allegations cannot defeat summary judgment]. Defendant further notes that, by Plaintiff's own admission during her deposition, the incidents Plaintiff discusses concerning cleaning the basement, cutting the grass, taking a break to get something from her locker, being told to do a job when it had gotten hot, and white employees allegedly getting "cooler jobs", all occurred outside of the filing deadline of Plaintiff's administrative charge. See Defendant's Exhibit 1 [Plaintiff's Deposition], pp. 80, 82, 89, 90, 96-97, 99, 105, 116-117; see also Defendant's Exhibit 14. Therefore, these claims are all time barred. See Barzanji v. Sealy Mattress Mfg. Co., 6 Fed.Appx. 720, 722 (10th Cir. 2001)[Noting that Plaintiff was limited to seeking relief for adverse actions occurring no more than three hundred days before the filing of administrative charge]; 42 U.S.C. § 2000e-5(e)(1).

In any event, with the possible exceptions of being counseled for taking a work break and written up for being in the bathroom too long, none of the incidents cited by the Plaintiff constitute "adverse employment actions" for purposes of Plaintiff's lawsuit. Brockman v. Snow, 217 Fed.Appx. 201, 205-206 (4th Cir. 2007)["The standard for an adverse employment action in a disparate treatment case is different that in a retaliation case: in a discrimination case, our precedent mandates that the Plaintiff has the higher burden of showing an 'ultimate employment' action that affects 'hiring, granting leave, discharging, promoting, and compensating.'" [quoting Page v Bolger, 645 F.2d 227, 233 (4th Cir. 1981)]; cf. Burlington N. and Santa Fe RWY. v. White, 548 U.S. 53 (2006)[Explaining difference between discrimination and retaliation adverse employment actions].





Indeed, it is doubtful that even Plaintiff's "counseling" claims satisfy the criteria for being adverse employment actions under the statute. Cunningham v. New York State Dep't of Labor, 326 Fed.Appx. 617, 619 (2d Cir. 2009)[Finding Plaintiff's complaints of "unfounded charges" of time abuse, reassignment of location of office, opposition to hiring Plaintiff's son, discontinuing a training conference organized by Plaintiff, and excluding Plaintiff from a conference and decision to hire outside consultant, do not constitute adverse employment actions]; Morales-Vallellanes v. Potter, 605 F.3d 27, 40 n. 17 (1st Cir. 2010)[Even considering incidents cumulatively, Plaintiff failed to establish that he suffered adverse action within context of Title VII] (citing Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 485 (5th Cir. 2008)[Finding negative treatment, undesired transfer to another department, undesirable break schedule, and assignment of more arduous and dirty jobs are not adverse actions] (retaliation context). Nor has Plaintiff presented any evidence to show that these alleged incidents, assuming they in fact occurred, had anything to do with her termination, other than the fact that they may have supported Allen's perception that Plaintiff was not adequately performing her job. See Defendant's Exhibit 2. See also Sullivan v. River Valley School District, 197 F.3d 804, 815 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....].

Plaintiff has also presented no evidence whatsoever to show a racial animus on the part of Allen or any other supervisory employee of the Defendant, other than the conclusory claims and allegations as set forth in her Complaint. However, such allegations, no matter how heartfelt, are simply not sufficient, standing alone without any supporting evidence, to avoid summary judgment. Boden, 978 F.Supp. at 659 [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of





unlawful discrimination]; see also Hawkins v. Pepsico, Inc., 203 F.3d 274, 281 (4th Cir. 2000) [affirming grant of summary judgment to the employer where the employee did not "show that...[the] problems were racial in nature"]. Rather, in order to proceed on her race discrimination claim, Plaintiff must present *evidence* sufficient to give rise to a genuine issue of fact that her termination was based on her race, not because the Defendant made a mistake (assuming the evidence showed any such mistake), treated her unfairly, or was simply incorrect in its findings or decisions concerning Plaintiff's employment. See Sullivan v. River Valley School District, 197 F.3d 804, 815 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....]; Kariotis v. Navistar Intern. Transp. Corp., 131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination. Thus when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection."]; Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); cf. Rudolph v. Hechinger, 884 F.Supp. 184, 188 (D.Md. 1995) ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977); Colbert v. Tapella, 677 F.Supp. 2d 289, 295 (D.D.C. 2010)(quoting Hairsine v. James, 517 F.Supp.2d 301, 308-309 (D.D.C. 2007)["[T]he scope of review in employment discrimination cases is more narrow than [Plaintiff] wishes because federal courts are not review boards for local employment decisions . . . . A personnel decision can be silly, it can be unfair, and it can be short-sighted without being illegal; Title VII protects discriminatory decisions, not wrong ones."]. Plaintiff has failed to submit any such evidence.



Therefore, Plaintiff has failed to create a genuine issue of fact as to either the second or fourth prongs of her prima facie case of disparate treatment race discrimination, and her race discrimination claim should be dismissed. Gairola v. Virginia Dep't of General Services, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that [her] disfavorable treatment was the result of discrimination...."]; Boden, 978 F.Supp. at 659 [former employee's own subjective belief and conclusory statements that she had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination]; Hawkins, 203 F.3d at 281 [affirming the grant of summary judgment to the employer where the employee did not "show that...[the] problems were racial in nature"]; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) [A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."].

**Conclusion**

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted,** and that this case be **dismissed.**

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

December 8, 2011
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



