IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Linda White, ) | Case No. 2:10-cv-0536-RMG |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| v. ) | |
| ) | |
| Santee Cooper, ) | |
| Defendant. ) | |
| _____) | |

This matter is before the Court on the Defendant's motion for summary judgment. (Dkt. No. 77). Plaintiff brought this case *pro se* alleging wrongful termination of Plaintiff because of her race and/or gender as a former employee of Defendant. This Court has construed Plaintiff's allegations as facts which "could reasonably read a claim under the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et. seq." (Dkt. No. 51). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and the Local Rules, all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration. The Magistrate Judge issued a Report and Recommendation on December 8, 2011, which recommended that Defendant's motion for summary judgment be granted. (Dkt. No. 85). Plaintiff filed objections to the Report and Recommendation (Dkt. No. 89), and Defendant filed a reply (Dkt. No. 91). After a *de novo* review, Defendant's motion for summary judgment is granted for reasons set forth below.

**Background**

Plaintiff, an African-American female, has been employed with Defendant since December 3, 2001. (Dkt. No. 77-1 at 1). Plaintiff alleges that she was terminated for cancelling a "non-job related class." (Dkt. No. 1). Plaintiff claims that the class was scheduled for July 7,

1

2008[1] and that she cancelled the class on July 4, 2008 due to "personal reasons out of my control (lack of training)." (*Id.*). Plaintiff alleges that "other participants had had hands-on-training by Santee Cooper with their trucks." (*Id.*). Plaintiff further alleges that she "ask for help and was told that [she] would receive help prior to class, but received no training C.D.L. class." (*Id.*). Plaintiff asserts that she "was wrongfully terminated by canceling this class because that I am a Black Female." (*Id.*).

Additionally, Plaintiff identified nine additional events which she asserted supported her discrimination claim (Dkt. Nos. 1-1; 28):

1. Plaintiff asserted that in the summer of 2002-2003, two Caucasian employees were asked to go to the basement to "clean oil mats and put down new mats" and "both refused to go because it was hot and dirty" while Plaintiff "went and did the job." (Dkt. No. 1-1 at 1). Plaintiff claims that she was called into the office but nothing was said to the other two employees. (*Id.*).

2. Plaintiff asserted that she and a Caucasian employee, Paul, were "told to cut grass" and that she "cut grass" while "Paul parked his mower and went somewhere else." (*Id.*). Plaintiff took a break "to get something to drink" because "it was real hot" and she was "real sweaty." (*Id.*). Plaintiff's Supervisor, Galene Allen, who is Caucasian, "wrote [me] up and I did all the work." (*Id.*).

3. Plaintiff asserted that she and two Caucasian employees were shoveling coal and the two employees went to go smoke and then took a break in Galene Allen's office. Plaintiff does not smoke and stayed in her work area. When she took a break, she "was called into

---

[1] Plaintiff also pointed out that "the dates on file for canceling this class is wrong" and that "[t]he class was canceled on the 07-04-08 date or before" as "[t]hat is the date that I received notice of the class." (Dkt. No. 28 at 1).

the office for a verbal counseling" while Plaintiff alleges nothing was said to the other employees. (*Id.*).

4. Plaintiff asserted that two Caucasian employees "could take their personal truck inside the repair shop of Santee Cooper to work on them during work hours using Santee Cooper tool and supplies." (*Id.* at 1-2).

5. Plaintiff asserted that two Caucasian employees were allowed to "cook for the group, to keep from working." (*Id.* at 2).

6. Plaintiff asserted that she "would see work that needed to be done before it got hot" and would be told not to do the work at that time but would be asked to do the same work when it did get hot. (*Id.*).

7. Plaintiff asserted that she had "messed up" her clothes due to "female problems" and went to the bathroom to clean up. (*Id.*). When she came out of the bathroom, two supervisors, Brian Singeltary and Galene Allen, both Caucasian, were waiting for her and "wrote [Plaintiff] up for being in the bathroom too long." (*Id.*). Plaintiff further alleged that a Caucasian coworker would "go into the nurses office to sleep when the nurse was not there" and that "[t]he supervisors could see this door to see who was coming in and out as well as how long they were in there." (*Id.*).

8. Plaintiff asserted that three Caucasian coworkers "had less seniority" and "got cleaner and cooler jobs." (*Id.* at 3).

9. Plaintiff asserted that "Santee Cooper has a big farm type tractor used for cutting grass" and that she was not permitted to use it to cut grass because she did not have a "CDL" but a two Caucasian employees were permitted to use the tractor without a CDL. (*Id.*).

3

Additionally, Plaintiff stated that after having a work related accident on August 13, 2007, "things started to go real bad" and that she "started to get even more harassment," causing her to go to her Superintendent to override her Supervisor, Richie Mills. (Dkt. No. 29 at 1). Plaintiff provided certain documents, including a written reminder of Plaintiff's violation of a safety policy that "led directly to [Plaintiff's] accident and injury on August 13th" signed by Richie Mills. (Id. at 2). Plaintiff also included a letter she wrote referencing the incident that stated that "the decision made by supervisors was unfair" and that "they are withholding my goal money, my raise, and this incident will be placed in my records for one year." (Id. at 3). Plaintiff stated that she "wanted to be treated fairly, and not discriminated against." (Id.). Plaintiff also produced an "Employee Performance Appraisal" form for the performance period January 1, 2007 to December 31, 2007 stating, *inter alia*, that Plaintiff has "proven to be a hard working, knowledgeable, and dependable employee" but that she needed "to improve on [Plaintiff's] sick leave usage" and "personal safety record." (Id. at 6-9).

This Court denied Defendant's motion to dismiss on February 18, 2011. (Dkt. No. 51).[2] Defendant filed the instant motion for summary judgment on October 14, 2011. (Dkt. No. 77). Plaintiff worked as a Utility Worker, which included assisting in "unloading coal trains and collect[ing] coal samples", handling "bulk materials", "maintain[ing] and landscap[ing] station grounds using various power equipment", "perform[ing] custodial work" in various areas, "assist[ing] with containment and cleanup of spill materials" and "assist[ing] operations with outage cleaning as necessary." (Dkt. No. 77-4 at 2). The Utility Workers were supervised by

---

[2] Defendant filed an additional motion to dismiss for lack of prosecution or in the alternative to compel Plaintiff to attend her deposition. (Dkt. No. 60). Plaintiff responded that she was sorry that she "did not see the notice for certified mail" but did "wish to go forward with this matter by doing whatever is required of me to make things complete." (Dkt. No. 68). Magistrate Judge Marchant granted the motion as a motion to compel, ordering Plaintiff "to attend her deposition and to properly respond to any discovery requests received from the Defendant." (Dkt. No. 69 at 2).

4

Gaylene Allen and Richie Mills, who reported to head supervisor Brian Singletary. (Dkt. No. 77-3 at 2).

During the last year of her employment, Plaintiff was supervised by Ms. Allen. (Dkt. No. 77-3 at 3). Ms. Allen testified that a "new job order process" was put into place in November 2007 which better enabled supervisors to "determine whether employees were completing job assignments in a timely manner." (Dkt. No. 77-3 at 3). Under the new process, "[e]mployees were required to sign their names on job orders upon completion of an assignment and to report any maintenance issues discovered during completion of the assignment." (Dkt. No. 77-3 at 3).

After the new process was put into place, Ms. Allen noticed that Plaintiff "was not completing assignments in a timely manner, was not sufficiently willing to take on new assignments, and was not sufficiently assisting her co-workers." (Dkt. No. 77-3 at 3). Throughout 2008, Ms. Allen "repeatedly observed Ms. White taking unauthorized breaks, failing to sufficiently assist her co-workers with assigned tasks, and failing to seek out additional assignments when her assigned tasks were completed." (*Id.*). Ms. Allen further testified that she "observed Ms. White failing to report to the shop room at the end of the day before leaving and failing to report maintenance issues in her work area." (*Id.*). Ms. Allen testified that she "regularly counseled Ms. White to improve her performance and commit to the responsibilities of her job." (*Id.*).[3] Regarding the cancellation of the CDL class by Plaintiff, Ms. Allen testified that she spoke with Plaintiff on the morning of July 3, 2008 to let her know about the class and Plaintiff was counseled on July 11, 2008 about cancelling the class without first obtaining

---

[3] This included verbal and written reminders that are in the record regarding Plaintiff's promptness and productivity.

5

supervisor authority. (Dkt. No. 77-3 at 4).[4] Ms. Allen testified that she was concerned that the Defendant would be charged for the cancelled class. (*Id.*).

Ms. Allen testified that because of "continued performance issues during the previous year . . . previous verbal and written reminders, and her unauthorized canceling of the CDL training class", on July 15, 2008, Plaintiff was placed "on a one day decision-making leave" with pay "to decide if she could improve her job performance." (*Id.*). Subsequent to Plaintiff returning to work after her "one day decision-making leave", Ms. Allen testified that "her performance did not improve." (*Id.*). While Ms. Allen continued to counsel Plaintiff, she did not see improvement and on September 25, 2008, recommended Plaintiff's "termination to Mr. Singletary due to her lack of productivity and poor performance." (*Id.*). Plaintiff was terminated on October 1, 2008. (*Id.*). Ms. Allen testified that her "decision to recommend [Plaintiff's] termination had nothing to do with her race or sex." (*Id.*). After Plaintiff was terminated, Plaintiff met with the President of Santee Cooper, who issued a letter confirming her termination. (Dkt. Nos. 77-11 at 2 and 77-2 at 14-15). Plaintiff admits that her job was hard for her, but stated at her deposition that she did the best she could and that in her opinion, she did her work better than her friends did. (Dkt. No. 77-2 at 15).

On November 3, 2008, Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission, alleging discrimination based on race in violation of the South Carolina Human Affairs Law and Title VII. (Dkt. No. 77-12 at 2). The Commission issued a right to sue letter on October 23, 2009. (Dkt. No. 77-13). Plaintiff filed the Complaint in the instant matter on May 5, 2010. (Dkt. No. 1).

---

[4] According to Ms. Allen, the CDL class was a knowledge class that did not require any prior experience. (Dkt. No. 77-3 at 4). Plaintiff alleged in her deposition that she believed that the class required prior "hands-on training" and she did not want to "go in there and flunk the class." (Dkt. No. 77-2 at 19).

6

## Discussion

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber,* 423 U.S. 261, 270–71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* In the absence of specific objections to the Report and Recommendation, this Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis,* 718 F.2d 198 (4th Cir.1983).

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). In passing upon a motion for summary judgment, the Court is to view the facts in a light most favorable to the non-moving party and to construe all inferences against the movant. *United States v. Diebold,* 369 U.S. 654 (1962). The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in her pleadings. Rather, the nonmoving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Conclusory allegations or denials, without more, are insufficient to preclude the granting of the

summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985).

As to her gender discrimination claims, Plaintiff has failed to exhaust her administrative remedies and thus her claims must be dismissed. A plaintiff's administrative claim "defines the scope of her subsequent right to institute a civil suit." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000). "If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent suit." *Id.* at 247-248. Fourth Circuit case law has generally precluded a subsequent claim in "formal litigation" where "the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Without exhausting administrative remedies in a Title VII claim, this Court is deprived of subject matter jurisdiction. *Id.* at 300-301. In the instant case, Plaintiff listed only "race" as the basis of her charge before the South Carolina EEOC. Thus, she has not administratively exhausted her claim based on gender discrimination and this Court lacks subject matter jurisdiction as to that claim. Therefore, Defendant's motion for summary judgment as to Plaintiff's gender discrimination claim is granted.

As to Plaintiff's claims for race discrimination, Defendant alleges, *inter alia*, that Plaintiff is unable to establish a prima facie case. As the Fourth Circuit has explained, a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004)). "A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a

genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision." *Diamond*, 416 F.3d at 318. In this instance, a plaintiff may "demonstrate that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons." *Hill*, 354 F.3d at 284. Alternatively, a plaintiff may "proceed under [the *McDonnell Douglas*] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in *McDonnell Douglas*. First, Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against her. Second, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions. Third, if the Defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really based on Plaintiff's race. *McDonnell Douglas Corp.*, 411 U.S. 792, 802–805 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–256 (1981); *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 234–235 (4th Cir.1991). Despite these shifting burdens of production, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. *Texas Dep't of Community Affairs*, 450 U.S. at 252–253; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

Under either avenue, Plaintiff must come forward with some evidence of discrimination and ultimately bears the burden of persuasion on the issue of discrimination. Plaintiff has not offered any direct or circumstantial evidence that race was a "motivating factor" in Defendant's termination decision and thus cannot proceed under the so called "mixed-motive" framework. In order to make out a prima facie case under McDonnell Douglas, Plaintiff must present evidence that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action; and (4) her position remained open or was filled by a similarly qualified individual outside the protected class." *Mahomes v. Potter*, 590 F.Supp.2d 775, 781 (D.S.C. 2008); see also, *Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006).

Plaintiff is unable to show that she was meeting her employer's legitimate expectations at the time that she was terminated. Plaintiff does not dispute that Ms. Allen thought that Plaintiff needed to improve and that Ms. Allen honestly believed that Plaintiff was not performing her duties fast enough. (Dkt. No. 77-2 at 13). A verbal reminder was issued to Plaintiff on March 5, 2008, reminding Plaintiff to "follow supervision's directions, to be productive during [her] daily job assignments and to communicate with supervision" (Dkt. No. 77-6 at 2) and a written reminder was issued on March 14, 2008 regarding productivity (Dkt. No. 77-7 at 2). Regarding the missed CDL class, Defendant presented a memorandum from Ms. Allen to Plaintiff explaining that Plaintiff had cancelled the CDL class "without proper authority and without informing supervision." (Dkt. No. 77-9 at 2). Plaintiff also stated that her job was hard for her but that she did the best she could. (Dkt. No. 77-2 at 15). Plaintiff testified that she did her work better than her friends did. (Dkt. No. 77-2 at 15).

Plaintiff has been unable to show that "she was qualified for her job and her job

performance was satisfactory." *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1228 (4th Cir. 1998)(record demonstrated that plaintiff was "repeatedly tardy, had multiple inadequate medpasses, and failed to submit any of her required monthly summaries"). As in *Karpel*, Plaintiff does not present evidence that the "recording of her deficiencies as an employee was racially motivated or that she was written up differently from other similarly situated employees." *Id.* Defendant has presented significant documentation regarding Plaintiff's lack of efficiency and timeliness. (Dkt. Nos. 77-3, 77-6, 77-7, 77-9 and 77-10). Plaintiff has also not presented any evidence as to the fourth element of her prima facie case – that her position remained open or that it was filled by someone similarly qualified outside of the protected class. (Dkt. No. 77-2 at 31).

While Plaintiff argues that she was terminated because of her race, subjective beliefs on Plaintiff's part alone are "insufficient to create a genuine issue of material fact as to any discriminatory conduct on [defendant's] part." *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124,135 (4th Cir. 2002); *see also, Boden v. U.S. Amada Ltd.*, 978 F.Supp. 657, 659 (E.D.N.C. 1997)("Plaintiff's own opinion, without supporting evidence, is not enough to establish discrimination."). The Fourth Circuit has held in wrongful discharge cases that "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000)(quoting *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)). Further, "a difference of opinion, coupled with. . .conclusory allegations of racism, cannot reasonably support the conclusion that [plaintiff's] discharge was motivated by racial animus." *Hawkins,* 203 F.3d at 281. Because Plaintiff has not established a prima facie case of racial discrimination, Defendant's motion for summary judgment is granted as to Plaintiff's racial discrimination

claims.

## Conclusion

This Court agrees with the conclusion of the Magistrate Judge, based on the reasoning set forth herein, and **GRANTS** Defendant's motion for summary judgment. (Dkt. No. 77).

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

January 18, 2012
Charleston, South Carolina